UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>                       Plaintiff,<br>v.<br>DREW MORGAN CICCARELLI,<br>                       Defendant. | Civil Action No. 20-CV-____ (___)<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against defendant Drew Morgan Ciccarelli:

## SUMMARY

1. This is a securities fraud enforcement action. From approximately May 2012 to July 2012 (the "relevant period"), Ciccarelli aided and abetted a scheme to defraud investors by arranging for stock promotional campaigns to boost demand for the stock of a company, Rarus Technologies, Inc. ("Rarus"). Rarus was secretly controlled by a group that sought to illegally dump shares into the market while concealing their control of the company. Rarus, an issuer of securities whose stock was publicly traded, was based in New York and, during the relevant period, it was purportedly developing a social media platform. It is a type of company that is often referred to as a "microcap" company and whose stock is often referred to as "microcap stock" because the company has low market capitalization (a measure of a company's value).

2. Ciccarelli was hired by a party (referred to in this complaint as "Individual A") to assist this party and his cohorts with a fraudulent scheme involving the sale of Rarus stock. Individual A and his cohorts (the "Rarus Control Group") controlled a large position in the

shares of Rarus and were thus "affiliates" of Rarus under the federal securities laws. An "affiliate" of an issuer is a person or entity that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such issuer (i.e. a control person). "Control" means the power to direct management and policies of the company in question. Typically, affiliates include officers, directors, and controlling shareholders but any person who is "under common control" with an issuer may also be an affiliate. Absent registration, affiliates may sell a small percentage of their stock pursuant to limitations established by the registration safe-harbor in SEC Rule 144 [17 C.F.R. 230.144]. Before selling stock, affiliates are required to: (a) register the stock sales with the Commission pursuant to Section 5 of the Securities Act [15 U.S.C. §77e]; (b) sell the stock pursuant to an applicable exemption from registration; or (c) sell the stock pursuant to conditions set forth in SEC Rule 144, including limitations on the amount of stock an affiliate can legally sell.

3. The Rarus Control Group sought to evade these requirements and restrictions and illegally dump their shares by concealing their control and ownership of Rarus, including by transferring their shares to offshore entities in amounts under 5% of the outstanding shares and concealing their connection with stock promotions designed to enhance demand for Rarus' stock among the investing public. The registration requirements and sale restrictions are designed to protect unsuspecting investors from, among other things, buying stock from company insiders who seek to dump their stock directly into the market instead of selling it in a registered offering of securities. A securities registration statement filed with the Commission contains important information about an issuer's business operations, financial condition, results of operation, risk factors, management, and certain large shareholders.

4.	During the relevant period, Ciccarelli knowingly or recklessly assisted the Rarus Control Group in their illegal sales of Rarus stock by arranging for a stock promotional campaign on behalf of the Rarus Control Group.  The campaign was designed to create demand for sales and to disguise the Rarus Control Group's ultimate sponsorship of that campaign.

5.	Individual A and Ciccarelli agreed to share half of the proceeds from the Rarus Control Group's sales of the securities of Rarus during a promotion arranged by Ciccarelli. Ciccarelli, in turn, agreed to share sixty percent of his proceeds with certain persons engaged by Ciccarelli who published Rarus-related promotional materials on their sites.  Following the Rarus campaign, Ciccarelli received his compensation from Individual A and shared it with the publishers.

6.	Through the activities alleged in this Complaint, Ciccarelli has aided and abetted (a) fraudulent or deceptive conduct in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) thereunder; (b) fraud in the offer or sale of securities, in violation of Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act"); and (c) unregistered sales of securities in violation of Sections 5(a) and (c) of the Securities Act.

7.	The Commission seeks a permanent injunction against Ciccarelli, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, an order barring Ciccarelli from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and/or 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], disgorgement with prejudgment interest, and a civil penalty.

## JURISDICTION AND VENUE

8.	The Court has jurisdiction over this case pursuant to Sections 20(d) and 22(a) of

the Securities Act [15 U.S.C. §§77t(d), 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), 78aa].  Venue is proper in this district because certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Massachusetts, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails.  For example, during the Rarus promotional campaign several individuals residing in Massachusetts purchased shares of Rarus.

9.  In connection with the conduct described in this Complaint, Ciccarelli directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

10. Ciccarelli's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

## **DEFENDANT**

11. Drew Morgan Ciccarelli ("Ciccarelli"), age 38, is a resident of Johns Island, South Carolina.  In 2012, during the time of the conduct alleged in this complaint, Ciccarelli controlled several businesses including Flip Ventures, LLC, that either directly promoted microcap stocks or paid others to promote microcap stocks at Ciccarelli's direction.

## **RELATED ENTITY**

12. Rarus is a Nevada corporation with last known headquarters located in Oceanside, New York.  On January 4, 2011, Rarus' initial public offering became effective.  During the relevant period, Rarus was quoted under the symbol RARS on OTC Link (previously, the "Pink Sheets") operated by OTC Markets Group, Inc.  During the relevant period, Rarus was

purportedly in the business of developing a social media platform.

## FACTS

13. From approximately 2010 to July 2012, Ciccarelli earned compensation for assisting persons who were undisclosed affiliates of various microcap issuers by concealing their association with related stock promotional campaigns, which allowed them to sell large blocks of shares without disclosing the affiliates' roles in those sales. Ciccarelli used intermediaries he controlled to pass funds from the affiliates to the promoters of their stock. In some instances Ciccarelli was compensated from proceeds of the stock sales; in other instances Ciccarelli was compensated directly from the promotional budget for a campaign. Ciccarelli understood that while stock promoters commonly disclose the identities of persons who pay for promotional campaigns, the promoters generally would not know about and would not identify the corporate affiliates who were ultimately the ones financing (and expecting to benefit from) the promotions. Through his intermediary companies, Ciccarelli assisted the affiliates by concealing their roles in funding various stock promotional campaigns.

### Consolidation of Rarus Stock by Rarus Control Group

14. On January 4, 2011, Rarus' securities registration statement filed with the Commission became effective and approximately nineteen persons purchased shares in that registered offering of securities.

15. On or about June 23, 2011, fifteen of the initial nineteen shareholders who had acquired shares in Rarus' initial registered offering transferred 75,000,000 shares (which exceeded 5% of Rarus' outstanding shares) to six offshore entities, all of which were controlled by the Rarus Control Group. Commission rules require issuers of securities like Rarus to list all persons holding greater than 5% of its outstanding stock in certain reports filed with the

Commission.  Moreover, broker-dealers rely on accurate shareholder ownership and issuer control information in order to avoid unknowingly participating in illegal unregistered offerings of securities.  By dividing these shares among six separately-named accounts, the Rarus Control Group concealed its control over all of the transferred shares and created a misleading façade that none of the offshore entities held amounts exceeding 5% of the outstanding shares of Rarus.  Four of the six offshore entities, accounting for 54,000,000 shares, had "in care of" addresses as Legacy Global Markets S.A. in Belize.  Collectively, these four entities, controlled by the Rarus Control Group, accounted for 54% of the purportedly unrestricted stock of Rarus and over 12% of the total outstanding stock.

16.     Between August and September 2011, all 54,000,000 shares held "in care of" Legacy Global Markets were deposited with the Depository Trust & Clearing Corporation ("DTCC") (a clearing and settlements service for member brokers), which makes shares available for quick electronic transfer by broker-dealers transacting trades in the over-the-counter market.  These 54,000,000 shares were the only shares deposited at DTCC as of September 5, 2011.

**Sale of Unregistered Securities at Inflated Prices**

17.     On May 8, 2012, Rarus announced in a press release that it had implemented a new business plan and had acquired certain intellectual property related to a social media platform named Zngle.  Rarus' stock significantly increased in price and trading volume following this press release.

18.     On or before June 6, 2012, Ciccarelli, through Flip Ventures, retained a promoter ("Promoter A") to publish and distribute a stock promotional campaign concerning Rarus and its Zngle social media website to run for one week.  Individual A (a member of the undisclosed

Rarus Control Group) agreed to pay Ciccarelli fifty percent of the net proceeds of the Rarus Control Group's sale of Rarus stock during the promotion. In turn, Ciccarelli agreed to distribute sixty percent of his portion of the proceeds to Promoter A and retain the balance for himself. Ciccarelli knew or was reckless in not knowing that his services were retained by Individual A for the purpose of concealing Individual A's funding of, and involvement with, the promotion of Rarus. Specifically, Ciccarelli understood that stock promoters would only disclose the identity of whoever directly paid them for a promotion.

19. Beginning on June 6, 2012 and running through at least June 11, 2012, Promoter A distributed promotions touting the merits of investing in Rarus. In the "disclaimer" at the end of the promotions, Promoter A stated that it expected to be compensated $200,000 to $300,000 from Flip Ventures.

20. The promotions were effective. Trading volume for Rarus stock increased to approximately 11.3 million shares on the first day of the promotion, up 645% from the average trading volume over the prior six days of trading of 1.5 million shares. The intraday high price for Rarus stock on June 6th was $0.14 per share, representing a sixty-five percent increase over the prior day's closing price. On June 7, 2012, the trading volume was over 9.7 million shares and remained higher than the pre-promotion average for the remainder of the weeklong promotion.

21. Between June 6 and 7, 2012, Legacy Global Markets sold approximately 3,339,150 shares of Rarus during the Flip Ventures-sponsored promotion, for gross proceeds of $378,110. No registration statement for these transactions was effective nor was an exemption applicable.

22. On July 6, 2012, Legacy Global Markets received a deposit of $4,670,000 in its

Cayman Islands bank account that, on information and belief, included the proceeds derived from sales of Rarus securities and other microcap issuers. On the same day, Legacy Global Markets transferred this entire balance to the Cayman Islands bank account of an affiliated entity, Law Firm A. Immediately thereafter, Law Firm A (controlled by the Rarus Control Group) transferred $150,055 to a Cayman Islands' bank account of another affiliated entity, Law Firm B. Law Firm B in turn transferred $150,000 to Flip Ventures. These funds represented Ciccarelli's compensation for his efforts in the Rarus stock promotional campaign in early June 2012.

23. On July 10, 2012, Ciccarelli caused Flip Ventures to wire $115,000 from the Flip Ventures bank account to Promoter A's bank account. This wire included Promoter A's portion of the compensation for the Rarus promotional campaign, as well as payments related to other business arrangements between them.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Aiding and Abetting Violations of Sections 5(a) and 5(c) of the Securities Act**

24. Paragraphs 1 through 23 above are re-alleged and incorporated by reference as if fully set forth herein.

25. By engaging in the conduct described above, Ciccarelli knowingly or recklessly provided substantial assistance to the Rarus Control Group's violations of Sections 5(a) and 5(c) of the Securities Act whereby they directly or indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been in effect and for which no exemption from registration has been available; and/or (b) made use of the means or instruments of transportation or communication in interstate

commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement has been filed and for which no exemption from registration has been available.

26. As a result, the Defendant aided and abetted violations of Sections 5(a) and (c) of the Securities Act and unless enjoined, will continue to aid and abet violations of Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a), (c)].

## SECOND CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) Thereunder

27. Paragraphs 1 through 23 above are re-alleged and incorporated by reference as if fully set forth herein.

28. By reason of the foregoing, the Rarus Control Group, directly or indirectly, acting knowing or recklessly, in connection with the purchase or sale of securities, by the use of means and instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange: (a) employed or are employing devices, schemes or artifices to defraud; or (b) engaged or are engaging in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

29. Ciccarelli knew or recklessly disregarded that Individual A's and his cohorts' conduct was unlawful and knowingly or recklessly rendered substantial assistance in this conduct.

30. The conduct of Ciccarelli involved fraud, deceit, manipulation, or deliberate or reckless disregard of regulatory requirements and directly or indirectly resulted in substantial losses to other persons.

31. As a result, Ciccarelli aided and abetted, and, unless enjoined, will continue to aid and abet, violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] thereunder.

## THIRD CLAIM FOR RELIEF
### Aiding and Abetting Violations of Sections 17(a)(1) and (3) of the Securities Act

32. Paragraphs 1 through 23 above are re-alleged and incorporated by reference as if fully set forth herein.

33. By reason of the conduct described above, the Rarus Control Group, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting knowingly, recklessly and/or negligently (a) employed devices, schemes, or artifices to defraud; and (b) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

34. Ciccarelli knew or recklessly disregarded that the Rarus Control Group's conduct was unlawful and knowingly or recklessly rendered substantial assistance in this conduct.

35. By reason of the conduct described above, Ciccarelli aided and abetted, and, unless enjoined will continue to aid and abet violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a permanent injunction restraining Ciccarelli, his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)], Section

17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

      B.      Order Ciccarelli to pay an appropriate civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

      C.      Require Ciccarelli to disgorge his ill-gotten gains, plus prejudgment interest;

      D      Enter an order barring Ciccarelli from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and/or 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

      E.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

      F.      Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

Respectfully submitted,

/s/ Deena R. Bernstein
Deena Bernstein (Mass Bar No. 558721)
    Senior Trial Counsel
Amy Gwiazda (Mass Bar No. 663494)
    Assistant Regional Director
J. Lauchlan Wash (Mass Bar No. 629092)
    Enforcement Counsel
U.S. Securities and Exchange Commission
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
BernsteinD@sec.gov

September 30, 2020